IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | case no. 09-03275 |
| YASEEN K. ODEH, | ) | Honorable Eugene R. Wedoff |
| | ) | |
| Debtor, | ) | |
| | ) | |
| THOMAS VALENTI, | ) | Adversary Proceeding No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YASEEN K. ODEH, | ) | |
| | ) | |
| Defendant. | ) | |

## THOMAS VALENTI'S COMPLAINT TO OBJECT TO DISCHARGE

Thomas Valenti, individually, (hereinafter "Valenti"), by and through his attorney, Adela

C. Lucchesi of Crowley & Lamb, PC, brings this adversary complaint (hereinafter "Complaint")

against debtor Yaseen K. Odeh (hereinafter "Odeh" or "Debtor"), pursuant 11 U.S.C. §727 (a) &

(c), the defendant, alleging as follows:

## BACKGROUND AND JURISDICTION

1.     On or about February 20, 2009, Odeh filed a voluntary petition under Chapter 7,

of title 11, United States Code (the "Bankruptcy Code"),[1] thereby commencing the instant case

(hereinafter the "Odeh Case"). On or about February 20, 2009, Debtor filed his Schedules of

Assets and Liabilities (hereinafter "Schedules") and Statement of Financial Affairs (hereinafter

"Statements"). As of the date of this Complaint, Debtor has not amended his Schedules or

---

[1]     Unless otherwise noted, all citations herein will be to sections of the Bankruptcy
Code or the Federal Rules of Bankruptcy procedure.

1

Statements.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334(b).

3.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C.

§157(b)(2)(l).

4.      Pursuant to 28 U.S.C. §§ 1408 and 1409, this district is the proper venue for the

adversary proceeding.

## ALLEGATIONS GENERAL TO ALL COUNTS

5.      On April 3, 2004 and thereafter, Odeh was a medical doctor licensed to practice

medicine.

6.      Odeh maintained offices in the County of Cook in the State of Illinois.

7.      On or about October 31, 2008, Valenti obtained a judgment against Odeh in the

amount of $53,524.20[2] (hereinafter "Judgment"). Therefore, Valenti is a creditor of Odeh.

8.      In November 2008 and until the filing of Odeh's voluntary Chapter 7 bankruptcy

filing, Valenti actively pursued supplemental proceedings against Odeh by issuing several

citations, wage garnishments, and non-wage garnishments to Odeh and third parties in attempt to

satisfy the Judgment. Specifically, Valenti issued (a) a party citation to Odeh; (b) third party

citations to US Bank, Cole Taylor Bank, and Bank of America; (c) wage garnishments to

Asthma's Herbs, Books & Medicine, Inc., Reems Clinic & Institute of Medicine, and Myoderma

total Wellness, Inc.; and (d) non-wage garnishments to Illinois Department of Healthcare and

---

[2]      The judgment amount does not include post-judgment interest through the date of
bankruptcy plus fees and costs Valenti is entitled to recover for the ongoing supplemental
proceedings against Odeh and third parties until the filing of his Chapter 7 bankruptcy on
February 20, 2009.

Family Services, United Health Care, and Blue Cross Blue Shield.

9.     After Odeh's bankruptcy filing, Valenti motioned this Court for leave to take Rule

2004 discovery of debtor and issue written discovery to non-debtor parties. On or about May 20,

2009, this Court granted Valenti leave to take the 2004 exam of Odeh and issue discovery to (a)

Asma Odeh; (b) Asma's Herbs, Books & Medicine, Inc.; (c) Reems Clinic & Institute of

Medicine; (d) Myoderma total Wellness, Inc.; (e) Illinois Department of Healthcare and Family

Services; (f) United Health Care; (g) Blue Cross Blue Shield; and (8) Odeh.

10.    On information and belief, Odeh is an employee, officer, director, and sole

shareholder of Reem's Clinic & Institute (hereinafter "Reem's Clinic").

11.    Odeh produced certain documents and subsequently appeared for his 2004 exam,

which was continued until further notice pending the production of additional documents

requested but not received by Valenti or the Trustee.

12.    Among the documents produced by Odeh include:

   a.    Odeh's individual Cole Taylor Bank statements for certain years,
         including 2007 & 2008;
   b.    Reem's Clinic & Institute of Medicine (hereinafter "Reem's Clinic") bank
         statements with United Trust Bank and Chase Bank for certain years,
         including 2007 & 2008:
   c.    Reem's Clinic's quarterly credits and disbursement computerized ledgers
         for certain years, including 2007 & 2008;
   d.    Mortgage statements from Countrywide Home Loans for Odeh's personal
         residence for certain months;
   e.    Partial Debtor's personal tax returns for certain years, including 2007 &
         2008;
   f.    Partial Reem's Clinic tax returns for certain years, including 2007 & 2008;
   g.    unsworn affidavits from various people regarding lumps sums of payments
         they received from Debtor in cash;
   h.    Reem's Clinic W-2s for certain years; and
   i.    lease for Asma Herbs, Books & Medicine.

3

13.    Reem's Clinic's ledgers and bank statements reveal several disbursements, which,

on information and belief, were paid directly to Debtor or on his behalf to third parties for his

personal benefit and were not accounted for in his verified Schedules and Statements. These

include, but are not limited to:

> a.    Cash disbursements identified as being paid to Odeh, some of which are designated as "cash transfer to Odeh", or "towards Odeh salary;"
>
> b.    Cash disbursements, which were not specifically designated, but some of which were explained by Debtor in his 2004 Exam as also being advanced to him toward his salary;
>
> c.    Monthly mortgage payments for Odeh's primary home residence, paid directly to the mortgage company;
>
> d.    School tuition for Odeh's children's at Agsa School, paid directly to the school;
>
> e.    Payment of attorney's fees and costs for Odeh's personal legal matters, including the instant bankruptcy proceedings;
>
> f.    Cash payments allegedly intended for construction on leased property. Debtor explained in his 2004 exam that the construction companies wanted to be paid in cash. However, despite multiple requests, Debtor has failed to provide any documents, including invoices, evidencing the cash payments to multiple construction companies;
>
> g.    Income to Reem's Clinic from various health insurance companies for services rendered, which were actually direct deposited into Odeh's personal banking account(s); and
>
> h.    Income to Reem's Clinic from credit card sales for services rendered, which were actually direct deposited into Odeh's personal banking account(s)

14.    According to Reem's Clinic's ledger records, over $100,000.00 was paid by

Reem's Clinic in cash disbursements alone for the year 2008. In 2008, approximately $9,800.00

of those funds specifically state that the cash payments from Reem's Clinic were paid to Odeh

towards his salary. However, Debtor's Statements estimated his 2008 salary at $65,000.00 for

4

the year 2008, but his tax returns for 2008 list Odeh's personal income at $0 and $51,343.00 in

rental real estate, royalties, partnerships, S Corporations, and trusts. No documents have ever

been provided to explain the monies that Odeh received from the cash disbursements, insurance

proceeds intended for Reem's Clinic, credit card sales intended for Reem's Clinic, and personal

bills paid by Reem's Clinic on Debtor's behalf.

15.     In the course of these proceedings Odeh has admitted that his mortgage payment

for his personal residence was paid through Reem's Clinic's corporate account(s). Reem's

financial records clearly show payments made directly to the mortgage company from Reem's

Clinic's corporate account(s) for Debtor's personal use.

16.     In the course of these proceedings Odeh has admitted that his children's school

tuition for Odeh's children's at Agsa School was paid through Reem's Clinic's corporate

account(s). Reem's financial records clearly show payments made directly to Agsa School from

Reem's Clinic's corporate account(s) for Debtor's personal use.

17.     In the course of these proceedings Odeh has admitted that attorney's fees and

costs for Odeh's personal legal matters, including the instant bankruptcy proceedings, were paid

through Reem's Clinic's corporate account(s). Reem's financial records clearly show payments

made directly to his personal attorneys from Reem's Clinic's corporate account(s) for Debtor's

personal use.

18.     According to the corporate ledger, Reem's Clinic received income from Illinois

Department of Healthcare and Family Services, United Health Care, and Blue Cross Blue Shield

for medical services rendered. However, Odeh's personal banking accounts statements from

Cole Taylor Bank reveal that these insurance payments were actually directly deposited into

Odeh's personal banking accounts, and not into Reem's Clinic's corporate accounts.

5

19.     According to Odeh's personal accounts with Cole Taylor Bank (which is a joint account with his Wife, Asma), the direct deposits from Blue Cross Blue Shield, totaled approximately $56,000.00 for the time period of January 1, 2007 - December 31, 2007; and approximately $16,000.00 for the time period of January 1, 2008 - December 31, 2008.

20.     Furthermore, the Cole Taylor Bank records also reveal that Reem's Clinic's credit card sales were also being direct deposited into Odeh's personal banking account(s). For the time period of January 1, 2007 - December 31, 2007, Odeh personally received approximately $16,350.00; and approximately $11,400.00 for the time period of January 1, 2008 - December 31, 2008 in Reem's Clinic's credit card sales.

21.     Despite Debtor's assertions to the contrary, the records reflect that Odeh and his wife are the only ones that received a benefit from the insurance proceeds and credit card sales.

22.     Just based on the Cole Taylor Bank records alone (and not including all the personal bills paid by Reem's Clinic for Debtor's mortgage, his kids' schooling, and attorney's fees and costs for his personal legal issues, etc.), Debtor's personal tax returns, Statements, and Schedules under estimate the actual income received by Debtor. Debtor's Schedules and Statements state that his personal income for 2007 was $40,067.00. However, Debtor's tax returns state that only $9,000.00 of that was paid to him as personal income.

23.     Odeh's 2008 income was estimated in his Schedules and Statements as $65,000.00. However, his tax returns for 2008 state that Odeh had NO personal income. Rather, the only personal income Odeh had for 2008 was $51,343.00 in rental real estate, royalties, partnerships, S Corporations, trusts, etc., pursuant to Section 17 of Debtor's Form 1040 U.S. Individual Income Tax returns. However, this does not explain his personal bills, insurance proceeds, and credit card sales direct deposited into Debtor's personal banking accounts.

6

24.     As set forth in detail below, Odeh should be denied discharge pursuant to Section

727 for the following reasons:

      a.     Odeh failed to keep and maintain records that support his Statements and
             Schedules in order to correctly determine his financial situation;

      b.     Odeh failed to keep and maintain records that clarify discrepancies
             between the Statements, Schedules and his statements made under oath
             with the financial documents provided to the Trustee and Valenti;

      c.     Odeh failed to turnover relevant documentation to clarify discrepancies
             between the Statements, Schedules and his statements made under oath
             with the financial documents provided to the Trustee and Valenti; and

      d.     Odeh made false oath or account when he verified the Statements and
             Schedules when he knew or should have known that said Statements and
             Schedules were false and under estimated his financial condition.

## COUNT I - FAILURE TO KEEP AND MAINTAIN RECORDS

25.     Valenti restates the allegations set forth in paragraphs 1-24 as though fully set

forth herein as paragraph 1-24 of this Count I.

26.     Odeh failed to keep or maintain fundamental business records, which Odeh has

asserted under oath proved that he adequately stated his financial affairs in his Schedules,

Statements, individual tax returns, and corporate tax returns for Reem's Clinic.

27.     Pursuant to Section 727(a)(3), a debtor will not be granted a discharge as to any

creditor if:

      the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or
      preserve any recorded information, including books, documents, records, and
      papers, from which the debtor's financial condition or business transactions might
      be ascertained, unless such act or failure to act was justified under all of the
      circumstances of the case.

28.    The documents provided by Debtor clearly show a discrepancy between the

income he stated to the bankruptcy court and his actual income.

29.    Debtor has set forth numerous excuses for these discrepancies under oath, which

include, but are not limited to, that:

        a.     Payments made to him directly or on his behalf by Reem's Clinic were
             personal loans;

        b.     The money deposited into his personal banking account(s) were mistakes,
             and Reem's Clinic was reimbursed;

        c.     He did not receive personal benefit from funds paid by Reem's Clinic to
             him directly or on his behalf;

        d.     He did not receive a benefit from the insurance proceeds or the credit card
             sales intended for Reem's Clinic, even though said funds were direct
             deposited into his personal banking accounts; and

        c.     He kept an accounting of all documents related to the cash disbursements
             he took for his personal use and/or towards his salary and all that income
             has been accounted for.

30.    Despite Debtor's explanations for the discrepancies in his financial documents,

Odeh has failed to provide any documents that support his contentions.

31.    It is clear that Debtor has failed keep or maintain fundamental business records

that accurately reflect his financial condition.

32.    To the extent that Debtor kept or maintained any business records, it was on a

piecemeal basis and did not support the material explanations Debtor stated under oath to explain

the discrepancies in his financial affairs.

33.    Debtor's indifference regarding the need to keep or maintain proper financial

records is further evidence by his failure to (a) provide the Schedules to his personal and

corporate tax returns; (b) provide documents evidencing which cash disbursements he received

from Reem's Clinic toward his salary, evidence of the alleged personal loans by Reem's Clinic,
and evidence that Reem's was reimbursed for payments from the insurance companies and credit
card sales; (c) amend the personal and corporate tax returns to reflect the loans and salaries that
Debtor alleges under oath that he received from Reem's Clinic; (d) amend his Schedules and
Statements to reflect all the proper creditors he asserted under oath; and (e) amend his Schedules
and Statements to accurately reflect the total monies he personally received for his personal use
and benefit.

34.     Furthermore, Debtor has failed to provide any justification for his failure to keep
or maintain appropriate financial records. Additionally, the overwhelming majority of the
documents received were either (a) not responsive to the requests; (b) incomplete; and (3) self
serving ledgers that summarized financial statements with no support whatsoever for the
transactions stated in said ledgers.

35.     Debtor has failed to keep or maintain basic financial records from which his
financial condition can be ascertained.

36.     Accordingly, Section 727(a)(3) prevents the Court from Granting Debtor a
discharge under Section 524.

## COUNT II - FAILURE TO TURNOVER RECORDS

37.     Valenti restates the allegations set forth in paragraphs 1-36 as though fully set
forth herein as paragraph 1-36 of this Count II.

38.     Count II is plead in the alternative to Count I.

39.     To the extent that the Debtor produces additional information in response to filing
of this Complaint, generally, and in particular Count I, he has wrongfully withheld such
information from the Trustee and Valenti.

9

40.    Accordingly, Section 727(a)(4)(D) prevents the Court from Granting Debtor a discharge under Section 524.

## COUNT III - FALSE OATH OR ACCOUNT

41.    Valenti restates the allegations set forth in paragraphs 1-36 as though fully set forth herein as paragraph 1-36 of this Count III.

42.    Debtor has executed a verification regarding the truth and accuracy of his Statements and Schedules.

43.    Debtor has further provided several statements under oath at his 2004 exam and creditors' meetings.

44.    According to the statements made by Debtor under oath and according to bank account records, corporate ledgers of Reem's CLinic, and other documents provided by Debtor or third parties, Debtor received income and loans from Reem's Clinic which were not itemized in his Statements, Schedules, or tax returns as set for in paragraphs 1-24 of this Complaint.

45.    On information and belief, Debtor reviewed his Statements and Schedules before verifying and filing said Statements and Schedules with the Bankruptcy Court.

46.    As of the date that this Complaint, Debtor has not attempted to amend his Statements or Schedules to reflect the additional income received or to reflect the additional creditors that Debtor has asserted under oath, including but not limited to Reem's Clinic.

47.    Furthermore, under his Statements, Debtor failed to list all personal banking institutions for the last two years prior to his filing this Chapter 7 bankruptcy, including but not limited to accounts at Cole Taylor Bank, which is the banking account that reflects the direct deposits of Reem's Clinic funds into Debtor's personal banking accounts.

10

48.     Each of the misstatements set forth above in paragraphs 1-36 of this Complaint is material in nature.

49.     Moreover, each of these misstatements is of such an extent, and occurred with such frequency that it evidences that Debtor knew that such statements were inaccurate, or was so indifferent to the accuracy of the Schedules at the time that they were verified, he knew that he had no idea whether the Schedules and Statements were in fact accurate.

50.     When Debtor attested to the accuracy and validity of the Statements and Schedules, he knowingly and fraudulently made a false oath and account.

51.     Accordingly, Section 727(a)(4)(A) prevents the Court from Granting Debtor a discharge under Section 524.

WHEREFORE, Thomas Valenti prays for the following relief in each Count of his complaint for an entry of a declaratory judgment finding and declaring that the indebtedness owed by Debtor to all creditors is not dischargeable in Debtor's bankruptcy case.

Respectfully Submitted,
Thomas Valenti,

By: /s/ Adela C. Lucchesi
      One of his attorneys

Adela C. Lucchesi, ARDC#6271305
Crowley & Lamb, PC
350 N. LaSalle St., Suite 900
Chicago, Illinois 60654 (312) 670-6900

11